UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY S.,

                         Plaintiff,

                                                   5:17-CV-00467

v.

                                                   (TWD)

NANCY A. BERRYHILL
ACTING COMMISSIONER OF SOCIAL SECURITY,

                         Defendants.
_____

APPEARANCES:                       OF COUNSEL:

OLINSKY LAW GROUP          HOWARD D. OLINSKY, ESQ.
Counsel for Plaintiff
300 South State Street, Suite 420
Syracuse, New York 13202

GRANT C. JAQUITH            KRISTINA COHN, ESQ.
Interim U.S. Attorney for the       Special Assistant U.S. Attorney
Northern District of New York
Counsel for Defendant
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL    STEPHEN P. CONTE, ESQ.
Social Security Administration      Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>DECISION AND ORDER</u>

Plaintiff Anthony S. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

Title XVI application for Supplemental Security Income ("SSI"). This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing the denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States Magistrate Judge. For the reasons discussed below, the Commissioner's decision denying Plaintiff SSI benefits is affirmed, and Plaintiff's complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Overview

Plaintiff was born in 1980, making him thirty-one years of age on October 20, 2011, the date he filed his applications for a period of disability and Disability Insurance Benefits ("DIB") and SSI with the Social Security Administration ("SSA"), alleging disability beginning February 20, 2009. (T. 318.[1]) He completed tenth grade and obtained his GED. (T. 40.) Plaintiff previously worked as a factory worker/machinist and cook. (T. 41.)

### B.     Procedural History

Plaintiff filed his original applications for a period of disability and DIB and SSI on November 13, 2009, alleging disability beginning February 20, 2009, with sufficient quarters of coverage to remain insured through December 31, 2009. (T. 114.) The applications were denied initially and later in an unfavorable decision by the Administrative Law Judge ("ALJ") on June 1, 2011, from which Plaintiff appealed. *Id.* On February 7, 2014, the Hon. David N. Hurd, U.S.

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T," and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

District Judge, affirmed the Commissioner's decision denying Plaintiff's applications. *See* [*Anthony S.*] *v. Colvin*, No. 5:11-CV-1496, 2014 WL 502503 (N.D.N.Y. Feb. 7, 2014).

Plaintiff's October 20, 2011, DIB and SSI applications were initially denied on May 7, 2012, and Plaintiff requested a hearing before an ALJ. (T. 114.) A hearing on the denial of Plaintiff's SSI application was held before ALJ Marie Greener on September 4, 2013, in Syracuse, New York. (T. 77-101.) Because of the denial of Plaintiff's earlier DIB and SSI applications, the earliest date of disability that could be considered with regard to Plaintiff's October 20, 2011, applications was June 2, 2011. (T. 114.) The ALJ granted Plaintiff's request to withdraw his October 20, 2011, application for DIB, leaving only Plaintiff's application for SSI for consideration. (T. 114.) Plaintiff, represented by counsel, testified at the hearing. (T. 82-105.) In a January 6, 2014, written decision, ALJ Greener found that Plaintiff did not meet the requirements for disability under Section 1614(a)(3)(A) of the Social Security Act at any time on or after June 2, 2011. (T. 126.)

On September 9, 2014, the Appeals Council issued an order remanding the case to the ALJ for resolution of issues described therein. (T. 133-34.) Following remand, a second hearing was held before ALJ Greener on July 2, 2015, in Syracuse. (T. 35-76.) Plaintiff, his father, and a vocational expert ("VE") gave testimony. (T. 35-76.) In a September 17, 2015, written decision, the ALJ again determined that Plaintiff did not meet the requirements for disability under Section 1614(a)(3)(A) of the Social Security Act at any time on or after June 2, 2011. (T. 25.) The Appeals Council denied review on March 31, 2017, making the ALJ's decision the final SSA decision. (T. 1-3.)

### C. The ALJ's January 6, 2014, Decision

In her January 6, 2014, Decision, the ALJ made the following six factual and legal findings. First, she found that Plaintiff had not engaged in gainful activity since October 20, 2011, the application date. (T. 116.) Second, the ALJ found Plaintiff's neurocardiogenic syncope and learning disability to be severe impairments and Plaintiff's complaints of chronic headaches, heart palpitations, shortness of breath, depression, and complaints regarding extreme heat to be non-severe impairments. (T. 116-119.) Third, the ALJ found that Plaintiff's severe impairments did not meet or were not medically equal to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T. 119-21.) The ALJ specifically considered Listing 12.04 (affective disorders). *Id.* Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "the full range of sedentary work as defined in 20 C.F.R. § 416.967(a)." (T. 121-24.) Fifth, the ALJ found Plaintiff was unable to perform any past relevant work. (T. 124.) Sixth, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 124.)

### D. Appeals Council's September 9, 2014, Remand to the ALJ

The Appeals Council found deficiencies in the analysis and findings made with regard to Plaintiff's learning disabilities and mental impairment in the ALJ's January 6, 2014, written decision and remanded the case to the ALJ with specific instructions. (T. 133-34.) The instructions addressed: (1) obtaining additional evidence regarding Plaintiff's mental impairments and further evaluating Plaintiff's mental impairments using the special technique described in 20 C.F.R. § 416.920a; (2) further consideration of Plaintiff's maximum residual

functional capacity; (3) obtaining evidence from a vocational expert if warranted by the expanded record; and (4) offering Plaintiff another hearing.  (T. 134.)

**E.      The ALJ's September 17, 2015, Decision**

In her September 17, 2015, written decision, ALJ Greener made the following six factual and legal findings.  (T. 13-25.)  First, the ALJ again found Plaintiff had not engaged in substantial gainful activity since October 20, 2011.  (T 16.)  Second, the ALJ  found Plaintiff's neurocardiogenic syncope to be his sole severe impairment.  (T. 16-19.)  The ALJ found that if Plaintiff had mental impairments they were not severe.  (T. 18.)  The ALJ also found Plaintiff's head aches and back pain to be non-severe.  (T. 18.)  Third, the ALJ found that Plaintiff's single severe impairment did not meet or was not medically equal to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ specifically considered Listings 11.02 (epilepsy, convulsive), 11.03 (epilepsy non-convulsive), 11.04 (central nervous system vascular accident), 11.18 (cerebral trauma), and 12.02 (organic mental disorders).  (T. 19.)  Fourth, the ALJ found Plaintiff had the RFC "to perform sedentary work as defined in 20 C.F.R. § 416.967(a) that is unskilled and only involves performance of routine tasks that do not change in pace or location on a daily basis and do not require working with others."  (T. 19.)  Fifth, the ALJ found Plaintiff was unable to perform any past relevant work.  (T. 23.)  Sixth, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including Document Preparer, Order Clerk    Food/Beverage, and Stem Mount Electrical Assembly.  (T. 24.)

**F.      The Parties' Contentions**

Generally, Plaintiff asserts two arguments in support of his motion for judgment on the

pleadings.  (Dkt. No. 10.)  First, Plaintiff claims the ALJ's Step 2 determination in the sequential

evaluation was not supported by substantial evidence as the ALJ did not properly consider

Plaintiff's mental impairments in her analysis of the severity of his affective disorder

(depression).  *Id*. at 11-14.[2]  Second, Plaintiff claims that at Step 5 of the sequential evaluation,

the ALJ's hypothetical question failed to properly consider all of Plaintiff's mental impairments

and, as a result, the VE's testimony did not constitute substantial evidence to support the ALJ's

decision that Plaintiff could perform work that exists in the national economy.  *Id*. at 14-15.

Generally, the Commissioner asserts two arguments in support of her motion for

judgment on the pleadings.  (Dkt. No. 13.)  First, the Commissioner contends the ALJ did

properly evaluate Plaintiff's mental impairments at Step 2 of the sequential evaluation, and even

if the ALJ should have found Plaintiff's mental impairment was severe, any error would be

harmless because the ALJ considered Plaintiff's mental conditions through the remaining steps

of the evaluation and found Plaintiff could perform skilled work that involved performance of

routine tasks that did not change in pace or location on a daily basis and did not include working

in conjunction with others.  *Id*. at 5-9.  Second, the Commissioner maintains the ALJ's Step 5

finding is supported by substantial evidence.  *Id.* at 10-11.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d

---

[2]  Page references to documents identified by docket number are to the numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Com'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)); *see also Norman v. Astrue,* 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.") (citing *Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999)).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the ALJ's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). The substantial evidence standard is "very deferential" to the Commissioner, and courts may reject the ALJ's findings "only if a reasonable fact finder would ***have to conclude otherwise***." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994 (emphasis in original)).

**B.      Standards for SSI Eligibility**

For purposes of SSI, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382(a)(3)(A). To qualify for benefits, the claimed disability must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at § 1382(c)(3)(C); *Tejada,*167 F.3d at 773.

The Social Security Act requires that the relevant physical or mental impairment be "of such severity that [plaintiff] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (citation and internal quotation marks omitted). In assessing a claim of disability, the Commissioner must consider "(1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability as testified to by plaintiff and

other witnesses; and (4) the claimant's background, age, and experience." *Williams,* 859 F.2d at 260.

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas,* 540 U.S. 20, 24 (2003).

## III. MEDICAL RECORDS

Plaintiff claims the ALJ failed to consider his mental impairments properly at Step 2 of

her evaluation.  (Dkt. No. 10 at 11-14.)  On appeal, Plaintiff's claimed mental impairments are identified as depression, short and long-term memory deficits, dysphoric moods, loss of usual interests, increased irritability, low self-esteem, moderately limited ability to maintain attention and concentration for extended periods, serious limitations or inability to meet competitive work standards in many areas of mental functioning, and he would be off task for twenty percent of an eight hour day.  *Id*. at 12-13.

### A.    Dennis M. Noia, Ph.D.

Dennis M. Noia, Ph.D., conducted a consultative psychiatric examination of Plaintiff on January 10, 2012.  (T. 540-543.)  Plaintiff told Dr. Noia he had no history of psychiatric hospitalizations or outpatient treatment.  (T. 534.)  Plaintiff admitted to symptoms of depression because of his medical problems, which had begun about seven years earlier, "including dysphoric moods, loss of usual interests, increased irritability, low self-esteem, problems with memory, problems with concentration, and diminished sense of pleasure."  *Id*.  Plaintiff complained of cognitive symptoms including short term and long term memory deficits.  *Id*.

Dr. Noia found Plaintiff's demeanor and responsiveness to questions to be cooperative and his manner of relating, social skills, and overall presentation adequate.  (T. 535.)  He also found Plaintiff to be appropriately groomed with good personal hygiene and with appropriate eye contact.  *Id*.  Plaintiff's speech intelligibility was fluent, the quality of his voice clear, and his expressive and receptive language adequate.  (T. 535-36.)  Plaintiff's thought processes were coherent and goal directed, with no evidence of delusions, hallucinations, or disordered thinking, and he was oriented x3 and his sensorium clear.  (T. 363.)  Dr. Noia found Plaintiff's attention and concentration to be intact, estimated Plaintiff's intellectual functioning to be in the average

range, with his general fund of information appropriate to experience, and his insight and

judgment to be good.  *Id*.

Dr. Noia described Plaintiff's mood as depressed and his appearance sad.  *Id*.  He also

found Plaintiff's recent and remote memory skills to be mildly to moderately impaired.  *Id*.  Dr.

Noia's AXIS 1 diagnosis was Depressive Disorder NOS and R/O Cognitive Disorder NOS.

(T. 543.)  He recommended that Plaintiff become involved in treatment to deal with his

depressive symptoms and found Plaintiff's prognosis to be guarded, with hope that with

intervention and family support he would find symptom relief and maximize his abilities.  *Id*.

Dr. Noia included the following medical source statement regarding Plaintiff:

> Vocationally, the claimant appears to be capable of understanding
> and following simple instructions and directions.  He appears to be
> capable of performing simple and some complex tasks with
> supervision and independently.  He appears to be capable of
> maintaining attention and concentration for tasks.  He can regularly
> attend to routine and maintain a schedule.  He appears to be
> capable of learning new tasks.  He appears to be capable of making
> appropriate decisions.  He appears to be able to relate to and
> interact moderately well with others.  He appears to be having
> difficulty dealing with stress.

(T. 536-37.)

**B.    State Agency Psychologist**, **E. Kamin, Ph.D.**

Dr. Kamin completed a Psychiatric Review Technique and Mental Residual Capacity

Assessment on Plaintiff on February 24, 2012.  (T. 541-58.)  Dr. Kamin found that Plaintiff had

an affective disorder (Disorder Depressive D/O) that was severe but did not meet or equal listing

level severity.  (T. 544, 549, 552.)  Dr. Kamin rated Plaintiff's functional limitations as "mild"

with regard to: (1) restriction of activities of daily living; (2) difficulties in maintaining social

functioning; and (3) difficulties in maintaining concentration, persistence, or pace.  (T. 551.)  Dr.

11

Kamin's rating was "never" as to repeated episodes of deterioration, each of extended duration. *Id*.

Dr. Kamin's summary conclusions in Plaintiff's Mental Residual Functional Capacity Assessment were that Plaintiff was significantly limited only with regard to three items in the categories Understanding and Memory, Sustained Concentration and Persistence, Social Interaction and Adaption.  (T. 555-56.)  The three on which Dr. Kamin found Plaintiff "moderately limited" were: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to accept instructions and respond appropriately to criticism from supervisors; and (3) the ability to set realistic goals or make plans independently of others.  *Id*.

### C.      Treating Physician Dr. Barber

On June 22, 2015, Dr. David Barber, Plaintiff's treating physician, re-signed a June 8, 2015, Medical Source Statement prepared by Elizabeth Foster, ANP, who saw Plaintiff regularly for chronic disease follow up during the years 2014 and 2015.  (T. 685-692, 772-75.)  Plaintiff was diagnosed in the Statement as having depression, and he exhibited signs and symptoms of anhedonia, blunt, flat, or inappropriate affect, feelings of guilt or worthlessness, difficulty thinking and with concentration, emotional withdrawal or isolation, and memory impairment. (T. 772.)  The Medical Source Statement noted that some of the information was subjective.  *Id*.

In addressing whether Plaintiff had the mental abilities and aptitude necessary to carry out particular jobs, Dr. Barber and ANP Foster opined that, *inter alia*, Plaintiff would be unable to meet competitive standards in a number of areas, including understanding and remembering very short and simple instructions, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, completing a normal workday and workweek

without interruptions from psychologically based symptoms, responding appropriately to changes in routine, dealing with normal work stress, traveling in unfamiliar places, and using public transportation. (T. 773.)

Dr. Barber and ANP Foster responded in the affirmative to the questions of whether Plaintiff's depression exacerbated his experience of pain or other physical symptoms, he had repeated episodes of deterioration or decompensation in work or work like settings, and whether he had deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. (T. 774.) The two indicated that Plaintiff would be off task more than twenty percent of the time, would have good and bad days as a result of his impairments, and would likely be absent more than four days a month as a result of his impairments. *Id.*

## IV. HEARING TESTIMONY REGARDING DEPRESSION

Plaintiff testified at his July 2, 2015, administrative hearing that "[m]y doctors say I'm depressed and angry. I feel I feel that I'm entitled to that anger and my depression being that my (sic) losing my whole life," and that he cannot replace anything because he is only receiving $17.00 a week from the Department of Social Services. (T. 48.) When asked if he was receiving treatment for depression or anger, Plaintiff testified "No. They just that's that's a doctor's opinion that's never seen me a day in my life. That's just his opinion, but I think I am entitled to those feelings." *Id.*

Plaintiff testified regarding difficulties sleeping (T. 54-55), and talked about being unable to have a normal social life because of his physical impairments, describing himself as "just nothing." (T. 56-57.) According to Plaintiff, he did not do anything socially because his father would have to take him because of Plaintiff's physical ailments, and he feels ashamed of having

to have his father take him places like he was a child.  (T. 58.)  Plaintiff testified "I don't have a life anymore.  I don't get up, I don't get to partake.  I sit there and watch people everyday have a . . . have a life that I can't have."  *Id.*

## V.    ANALYSIS

### A.    Step 2 Evaluation of Mental Impairments

Plaintiff argues that the ALJ erred at Step 2 of the sequential evaluation in finding that his mental impairments were non-severe.  (Dkt. No. 10 at 11-14.)  The Court disagrees and finds the ALJ's determination in this regard to be based upon correct legal principles and supported by substantial evidence.  The Court further finds that even if the ALJ erred in failing to find Plaintiff had severe mental impairments, the error was harmless in this case.

At Step 2 of the evaluation, the medical severity of a claimant's impairments is considered.  20 C.F.R. § 416.920(a)(4)(ii).  "Impairments" are "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory techniques."  *See* 42 U.S.C. § 423(d)(3).  A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 416.920(c), 416.921.  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, No. 07 Civ. 10563 (GBD) (AJP), 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008)); 20 C.R.F. § 416.921(b).

"Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims'[ ], the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). The ALJ should normally not make a finding of severe where the medical evidence establishes only a "slight abnormality which would have no more than a minimal affect on an individual's ability to work." *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999 (citation and internal quotation marks omitted). The claimant bears the burden of presenting evidence to establish severity. *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, No. 7:05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)); 20 C.F.R. § 416.912(a). *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999).

The Step 2 evaluation for mental health impairments requires the ALJ to follow the "special technique" set forth at 20 C.F.R. § 416.920a(b). First a determination must be made as to whether the claimant has a medically determinable mental impairment, and the symptoms, signs, and laboratory findings substantiating it must be specified. *Id.* The ALJ must then rate the degree of functional limitation resulting from the impairments. *Id.* The four broad functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* at §416.920a(c). If the degree of limitation in each of the first three areas is mild or better then the reviewing authority will generally conclude that the claimant's mental impairment is not severe and will deny benefits. *Id.* at § 416.920a(d)(1) Application of this process must be documented, and the ALJ's written decision

must reflect application of the technique and include a specific finding as to the degree of limitation in each of the four functional areas. *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (remanding where the ALJ did not adhere to the special technique).

**B.     ALJ's Step 2 Determination that Plaintiff's Mental Impairments are Non-Severe**

Plaintiff argues that in light of the evidence in the record, the ALJ's failure to determine Plaintiff's affective disorder   depression   was severe in her Step 2 evaluation was erroneous. (Dkt. No. 10 at 11-12.)  Plaintiff further asserts the ALJ failed to properly consider Plaintiff's mental impairments in her analysis of the severity of Plaintiff's affective disorder. *Id.*  The Court finds the ALJ followed proper legal standards in her Step 2 evaluation and her non-severe determination was supported by substantial evidence in the record.  The Court further finds that even if the ALJ should have found Plaintiff's mental impairments were severe, her failure to do so was harmless error.

On January 10, 2012, consultative examiner psychologist, Dr. Noia, found Plaintiff's mood depressed and appearance sad and his affect constricted and somewhat reduced in intensity compared to his thought; diagnosed him with depressive disorder NOS; and recommended that Plaintiff become involved in treatment to deal with his depressive symptoms.  (T. 536-37.) However, Dr. Noia also found Plaintiff to be cooperative and responsive, well spoken with coherent and goal directed thought processes, oriented x3, with no evidence of disordered thinking, concentration intact, and with good insight and judgment.

Dr. Noia's diagnosis of depressive disorder NOS is not, by itself, sufficient to conclude that Plaintiff's depression is severe for purposes of the Step 2 evaluation. *See Taylor*, 32 F. Supp. 3d at 265 (mere presence of an impairment is not, by itself, sufficient to render a condition

severe).  Nor do Plaintiff's self-reported symptoms of depression including dysphoric moods, loss of usual interests, increased irritability, low self-esteem, problems with memory and concentration, and diminished sense of pleasure mandate a finding of severe mental impairment as Plaintiff suggests, given that nowhere in his evaluation did Dr. Noia opine that Plaintiff's depression or its self-reported symptoms significantly limited his mental ability to do basic work activities.  *See* 20 C.F.R. §§ 416.920(c), 416.921.  In fact, in his medical source statement. Dr. Noia found that:

> Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions.  He appears to be capable of performing simple and some complex tasks with supervision and independently.  He appears to be capable of maintaining attention and concentration for tasks.  He can regularly attend to routine and maintain a schedule.  He appears to be capable of learning new tasks.  He appears to be capable of making appropriate decisions.  He appears to be able to relate to and interact moderately well with others.  He appears to be having difficulty dealing with stress.

(T. 536-37.)

While Dr. Kamin found that Plaintiff's depression was severe in his February 24, 2012, Psychiatric Review Technique, he rated Plaintiff's functional limitations as "mild" with regard to: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence, or pace; and "never" as to repeated episodes of deterioration, each of extended duration.  (T. 551.)  The regulations provide that the "if we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  *See* 20 C.F.R. § 416.920a(d)(1).

Plaintiff argues that the ALJ failed to properly consider Dr. Kamin's finding in the

Mental Residual Functional Capacity Assessment that Plaintiff was "moderately limited" in the

ability to maintain attention and concentration for extended periods; to accept instructions and

respond appropriately to criticism from supervisors; and to set realistic goals or make plans

independently of others in determining severity.  (Dkt. No. 10 at 12; T. 555-56.)  "In general,

where an ALJ erroneously finds that a condition is not severe at step 2 of the sequential

evaluation, but continues with reviewing that impairment throughout the sequential analysis and

does not deny the claim due to lack of severe impairment alone, there is no error." *Habberfield*

*v. Colvin*, No. 3:14-CV-1422 (LEK/CFH), 2016 WL 769774, at *14 (N.D.N.Y. Feb. 1, 2016)

(citing *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010)); *see also* 20 C.F.R. §

416.923 (the combined effects of all impairments must be considered in the sequential analysis

regardless of whether any impairment, if considered separately, would be of sufficient severity).

In her September 17, 2015, decision, the ALJ considered Dr. Kamin's moderate limitation

findings in her analysis of Plaintiff's RFC.  (T. 21.)  Therefore, even if the ALJ arguably should

have found Plaintiff's mental impairments to be severe at Step 2, the Court finds her failure to do

so was harmless error.

The Court likewise finds the ALJ did not err in giving little weight in her Step 2 analysis

to Dr. Barber and ANP Foster's June 8, 2015 (re-signed on June 22, 2015), Medical Source

Statement in which Plaintiff was diagnosed as having depression and described as showing signs

of anhedonia, blunt, flat, or inappropriate affect, feelings of guilt or worthlessness, difficulty

thinking, or concentration, emotional withdrawal or isolation, and memory impairment.[3]  (T. 772.)  The ALJ's rationale for the little weight given was that it was no more than a listing of symptoms stated by Plaintiff and noted by the doctor.  (T. 18.)  The ALJ also considered that neither Dr. Barber nor anyone else had treated Plaintiff for any mental impairment and none had been diagnosed by any treating source.  *Id.*

The medical records do not include a record of any treatment received by Plaintiff for depression, and at his July 2015 hearing, he denied receiving treatment for depression.[4]  The records do show Plaintiff took Lexapro for periods of time over the years, but reflect Lexapro was initially prescribed in November 2009 at the New York Heart Center for Plaintiff's syncope, and Plaintiff was still taking it for that purpose as late as April 2013.  (T. 511, 566.)

The "treating physician rule" provides that a treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and is not inconsistent with other substantial evidence.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).  The Court finds Dr. Barber's opinion, to the extent it was intended to identify Plaintiff's depression as a severe

---

[3]  The Court notes that the ALJ did give some weight to Dr. Barber and ANP Foster's findings regarding Plaintiff's limitations in adaption and social functioning and to a limited extent incorporated them into the mental residual functional capacity assessment she found.  However, the ALJ was careful to note that she found the limitations, *i.e.*, ability to accept instructions and respond appropriately to criticism from supervisors; inability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and inability to act appropriately with general public and maintain socially appropriate behavior to be based on symptoms related to Plaintiff's medical condition and reiterated that Plaintiff did not have a severe mental impairment.  (T. 22.)

[4]  Dr. Rashid Ijaz, M.D., a clinical neurologist who saw Plaintiff for his history of headaches and neurocardiogenic syncope, noted during an October 22, 2014, visit that Plaintiff seemed very depressed, but his recommendation Plaintiff see a psychiatrist for psychotherapy appears to have been for his headaches and syncope episodes.  (T. 670-71.)

impairment, is not well-supported by medical findings or consistent with substantial evidence, particularly given the absence of any record of diagnosis of depression or treatment for depression by a psychiatrist or psychologist over the many years during which Plaintiff claims to have been disabled and for which medical records have been provided.

Moreover, the treatment notes of ANP Foster, who worked under the supervision of Dr. Barber and saw Plaintiff at regular intervals from May 12, 2014, through June 16, 2015, fail to support a finding that Plaintiff's depression constituted a severe impairment. The treatment notes do not list depression as one of Plaintiff's Active Health Problems and, with the exception of the note for September 9, 2014, which states Plaintiff has insomnia, consistently indicate "[n]o anxiety, no depression, and no sleep disturbance," under the category "Psychological" in "Review of Systems."[5]  (T. 733-65.)

### C.    The ALJ's Step 5 Determination

The initial hypothetical presented to the VE by the ALJ required him, *inter alia*, to assume an individual who "due to a mental impairment . . . requires unskilled work and routine tasks which do not change in pace or location on a daily basis." (T. 70-71.)  The hypothetical was subsequently expanded to include that the "individual cannot work in conjunction or cooperation with other coworkers although he can work in proximity to others." (T. 71.)

A VE's testimony may be relied upon by the ALJ only if a claimant's impairments are

---

[5]  Plaintiff is described as being in a dysthymic, empty, unhappy mood with a flat affect congruent with mood on June 10, 2014, having a flat affect on September 9, 2014, being in a dysthymic, depressed mood with abnormal affect congruent with mood on March 27, 2015, and a dysthymic, empty, depressed mood with an abnormal. somber affect congruent with mood on June 16, 2015.  (T. 740, 744, 754, 761.)  However, depression was never added to Plaintiff's list of active problems and on the review of systems, the psychological category remained "No anxiety.  No depression" throughout.  (T. 733-65.)

accurately portrayed.  *Hudson v. Comm'r of Soc. Security*, 5:10-CV-300, 2011 WL 5983342, at

\*9 (D. Vt. Nov. 2, 2011).  Plaintiff claims the ALJ's hypothetical question to the VE failed to

properly consider Plaintiff's deficiencies in concentration, persistence or pace, and as a result, the

VE's testimony did not constitute substantial evidence to support the ALJ's Step 5 determination

that Plaintiff could perform work that exists in the national economy.  (Dkt. No. 10 at 14-15.)

Plaintiff argues the ALJ could not properly account for Plaintiff's deficiencies in concentration,

persistence, and pace by restricting the hypothetic posed to the VE to simple, routine, or

repetitive tasks.  *Id*.  *See Karabinas v. Colvin*, 16 F. Supp. 3d 206, 2015 (W.D.N.Y. 2014)

(collecting cases).

The Second Circuit has found that failure to explicitly incorporate a claimant's limitations

in concentration, persistence, or pace in a hypothetical is harmless error if "(1) medical evidence

demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite

limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to

include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a

claimant's limitations in concentration, persistence, and pace[.]"  *McIntyre,* 758 F.3d at 150; *see*

*also Tana D. v. Berryhill*, No. 1:17-CV-0414 (CFH), 2018 WL 4011560, at \*7 (N.D.N.Y. August

22, 2018).

The ALJ's hypothetical was limited to unskilled work.  (T. 70-71.)  Moreover, it is by no

means clear from the medical evidence that a limitation in concentration, persistence, or pace

should have been included in the hypotheticals presented to the VE in this case.  Even if it

should, the ALJ's failure to do so was harmless error because the medical evidence demonstrates

Plaintiff is capable of following simple instructions and directions and capable of performing

simple and complex tasks. Dr. Noia opined in his medical source statement that Plaintiff "appears to be capable of maintaining attention and concentration for tasks." (T. 536-37.) Dr. Noia also opined that "the claimant appears to be capable of understanding and following simple instructions and directions . . . and performing simple and some complex tasks with supervision and independently." *Id*.

As noted above, in his Psychiatric Review Technique on Plaintiff, State Agency Psychologist Dr. Kamin rated Plaintiff's functional limitation as to "difficulties in maintaining concentration, persistence, or pace" as "mild." (T. 551.) In his Mental Residual Functional Capacity Assessment on Plaintiff, Dr. Kamin found Plaintiff's "ability to maintain attention and concentration for extended periods" to be "moderately limited." (T. 555.) However, Dr. Kamin also found that Plaintiff was not significantly limited in a number of areas which suggest he can engage in simple, routine tasks or unskilled work, including, *inter alia*, the ability to remember work like procedures and understand and remember very short and simple instructions as well as detailed instructions; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to ask simple questions or request assistance; and the ability to respond appropriately to changes in the work setting. (T. 555-56.)

In light of the foregoing, the Court finds that the ALJ's decision was based upon correct legal standards and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the SSA.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment in the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 20, 2018
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge